**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ZLATKO BRUJIC** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-3003** |
| **N. BURL CAIN, WARDEN** | **SECTION "C"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.[1]

### I.      *Procedural and Factual History*

Petitioner, Zlatko Brujic, is a state prisoner incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.  On October 28, 2003, Brujic was charged by bill of

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, or that the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

information with obstruction of justice pursuant to Louisiana Revised Statute 14:130.1.[2] Brujic

pleaded not guilty on November 5, 2003.[3]

On November 17, 2008, Brujic proceeded to trial.  The following facts were established

at trial and summarized by the Louisiana First Circuit Court of Appeal:

> On July 4, 2001, Samantha Jaumet was murdered in her home in St. Tammany Parish. The ensuing investigation ultimately identified Dominic Robinson as the murderer.[4] Robinson was an acquaintance of the defendant. During the course of the investigation into the Jaumet homicide, the defendant provided several statements to law enforcement officials during the period from December 2002 until October 2003. In defendant's final taped statement, he admitted that Robinson had contacted him soon after murdering Jaumet, and that he aided Robinson in leaving the vicinity of the crime scene, undetected by the police, and further assisted Robinson in the disposal of bloody clothing. The defendant's final statement to the police was in direct contrast to his initial statements wherein he denied having any contact with Robinson in close proximity to the Jaumet murder.
>
> According to Detective Ralph Sacks, who assisted in the investigation of the Jaumet murder for the St. Tammany Parish Sheriff's Office, the lack of physical evidence against Robinson had initially "crippled" the investigation. Dr. Michael DeFatta, who performed the autopsy on Jaumet and was accepted by the trial court as an expert forensic pathologist, testified that Jaumet was shot from a distance of twelve to forty-three inches. The bullet struck Jaumet behind her left ear and would have caused blood spatter or other DNA evidence to be left on the

---

[2] State Rec., Vol. 1 of 5, Bill of Information, Twenty-Second Judicial District Court for the Parish of St. Tammany.  The two-defendant bill of information also charged Sarah A. Faison with obstruction of justice.  The State subsequently severed the charges involving these two defendants.  *Id.*, Trial Transcript (Vol. I - 11/17/08), p. 3.

[3] *Id.*, Minute entry dated 11/5/03.

[4] Robinson was arrested in August 2001 in Terrebonne Parish for his role in a carjacking unrelated to the Jaumet murder. Robinson was eventually convicted of the Jaumet murder.

shooter. According to Dr. DeFatta, the destruction of physical evidence on the shooter would have prevented an opportunity to identify that person.[5]

Following a three-day jury trial, Brujic was found guilty as charged.[6] On December 16, 2008, the trial court denied Brujic's motion for new trial and motion in arrest of judgment, and sentenced Brujic to 40 years imprisonment at hard labor.[7] The State filed an habitual offender bill of information.[8] On February 5, 2009, the trial court found Brujic to be a third-felony offender and sentenced him to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[9]

Brujic appealed to the Louisiana First Circuit Court of Appeal. On October 23, 2009, the court of appeal affirmed his conviction and sentence. The court of appeal rejected his three assignments of error, which included: (1) his constitutional right to counsel was violated by failure to appoint counsel for the defendant until July 10, 2008, almost five years after the prosecution had commenced; (2) the trial judge erred in denying the motion to quash on the

[5] *State v. Brujic*, 2009-0719, 2009 WL 3452893 (La. App. 1st Cir. 10/23/09) (footnote in original).

[6] State Rec., Vol. 1 of 5, Minute Entry, 11/19/08; State Rec., Vol. 3 of 5, Trial Transcript (Vol. III - 11/19/08), p. 34.

[7] State Rec., Vol. 1 of 5, Minute Entry, 12/16/08; State Rec., Vol. 3 of 5, Transcript of Sentencing, p. 4.

[8] La. R.S. 15:529.1; State Rec., Vol 1 of 5 (Multiple Offender Bill of Information filed 11/20/08).

[9] State Rec., Vol. 1 of 5, Minute Entry, 2/5/09; State Rec., Vol. 3 of 5, Transcript of Multiple Offender Hearing, p. 28.

basis of a violation of La. C.Cr.P. art. 578; and (3) the trial judge erred in denying the defendant's motion for stay order pending application for supervisory writs.[10]  Brujic sought review to the Louisiana Supreme Court, which denied relief without stated reasons on April 30, 2010.[11]

On January 24, 2011, Brujic filed an application for post-conviction relief in the state district court.[12]  In that application, he raised three claims: (1) he was denied his Sixth and Fourteenth Amendment right to appellate review based on the denial of his trial transcript; (2) he received ineffective assistance of counsel at trial and on appeal because counsel failed to: (a) file a motion to suppress his statements; (b) investigate and prepare for trial;  (c) subpoena witnesses; (d) preserve errors for direct review and raise on appeal the issue of the time limitation to prosecute; (e) allow petitioner to supplement the record on direct appeal

---

[10]  *State v. Brujic*, 2009-0719, 2009 WL 3452893 (La. App. 1st Cir. 10/23/09).

[11]  *State v. Brujic*, 2009-2517 (La. 4/30/10), 34 So.3d 280, State Rec., Vol. 4 of 5.

[12]  State Rec., Vol. 4 of 5, Uniform Application for Post-Conviction Relief dated January 24, 2011.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).  If that date cannot be gleaned from the state court record with respect to the filing, this Court will use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed. In those instances where no signature date appears on a document and no other evidence is available, the Court will look to the file-stamp placed on the document by the clerk of court.

by allowing him to have the trial transcripts in his custody; and (3) prosecutorial misconduct.[13] On November 7, 2011, the state district court denied the claims on the merits.[14] Brujic sought supervisory writs to the Louisiana First Circuit Court of Appeal, raising only two issues: the denial of his constitutional right to appellate review based on the denial of his trial transcript, and ineffective assistance of trial counsel in failing to file a motion to suppress, prepare for trial, and subpoena an alibi witness. On February 29, 2012, the court of appeal denied relief without stated reasons.[15] Counsel for Brujic filed a writ application to the Louisiana Supreme Court raising two claims: ineffective assistance of counsel at trial in failing to file a motion to suppress, prepare for trial, and subpoena an alibi witness; and ineffective assistance on appeal in failing to pursue all errors on appeal.[16] On June 22, 2012, the Louisiana Supreme Court denied relief without stated reasons.[17]

On December 17, 2012, Brujic filed his federal application for *habeas corpus* relief.[18] In

---

[13] *Id.* Petitioner was represented at both trial and on appeal by the same counsel, Don Cameron.

[14] State Rec., Vol. 4 of 5, District Court Judgment denying post-conviction relief, No. 371497 "A" (11/7/11); Rec. Doc. No. 3, Exhibit Part 2.

[15] State Rec., Vol. 4 of 5, *State v. Brujic*, 2011-2238 (La. App. 1st Cir. 2/29/12).

[16] State Rec., Vol. 5 of 5. On March 29, 2012, Kevin Boshea filed an application for writs of certiorari, mandamus and prohibition on behalf of petitioner.

[17] State Rec., Vol. 4 of 5, *State v. Brujic*, 2012-0707 (La. 6/22/12), 91 So.3d 969.

[18] Rec. Doc. No. 3, Petition. "A prisoner's *habeas* application is considered 'filed' when delivered to the prison authorities for mailing to the district court." *Roberts v. Cockrell*, 319

his application, Brujic asserts two claims for relief: (1) he was denied his Sixth and Fourteenth Amendment right to appellate review based on the denial of his trial transcripts; and (2) he received ineffective assistance of trial counsel because counsel failed to: (a) file a motion to suppress his statements; (b) investigate and prepare for trial; and (c) subpoena an alibi witness.

The State filed a response conceding that the federal application is timely.  The State argues, however, that petitioner's first claim is unexhausted.[19]  The State contends that because one of his claims is unexhausted, petitioner's federal application is a "mixed" petition subject to dismissal without prejudice.  *See Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir.1998) ("A habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice.").  In his reply, Brujic concedes that the claim was inadvertently omitted by his retained counsel from his writ application to the Louisiana Supreme Court, and is thus unexhausted.  Recognizing the unexhausted nature of the claim, Brujic requests the opportunity to amend his petition by deleting the unexhausted claim, rather than face dismissal for failure to exhaust or technical procedural default.[20]

---

F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner signed the petition on December 17, 2012, which is presumed to be the earliest date on which it could have been delivered to prison authorities for mailing.

[19] Rec. Doc. No. 16, State's Response, p. 4.

[20] Rec. Doc. No. 17, Petitioner's Reply, pp. 3-4.

The Court notes that it does appear that petitioner's first claim is unexhausted. Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his remedies in state court before seeking *habeas corpus* relief. "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir.2001) (internal quotation marks omitted). Generally, the federal exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules. *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.1988).

Petitioner's claim that he was denied his right to appellate review was first raised in the state post-conviction proceedings. Brujic presented this claim to the state district court and the court of appeal. As Brujic concedes, his retained counsel did not include the claim in his writ application to the Louisiana Supreme Court.[21] The writ application filed with the Louisiana Supreme Court plainly did not specify the ground as a claim for relief.

In *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004), the United States Supreme Court explained that claims are unexhausted unless they are expressly raised by a petitioner in his state-court petition, brief, or similar document. In that case, the Supreme Court rejected inmate Reese's argument that his claims were fairly presented to the Oregon

---

[21] Rec. Doc. No. 3, copy of writ application attached to Petition; see also State Rec., Vol. 5 of 5, Louisiana Supreme Court writ application, p. 16. The writ application mentions merely the fact that petitioner in his *pro se* post-conviction writ application cited as error the trial court's denying him his trial transcript.

Supreme Court because the justices of that court had the "opportunity" to review the lower court records when deciding whether to grant discretionary review. The United States Supreme Court rejected that argument, holding:

> We recognize that the justices of the Oregon Supreme Court did have an "opportunity" to read the lower court opinions in Reese's case. That opportunity means that the judges could have read them. But to say that a petitioner "fairly presents" a federal claim when an appellate judge can discover that claim only by reading lower court opinions in the case is to say that those judges must read the lower court opinions—for otherwise they would forfeit the State's opportunity to decide that federal claim in the first instance. In our view, federal habeas corpus law does not impose such a requirement.

> For one thing, the requirement would force state appellate judges to alter their ordinary review practices. Appellate judges, of course, will often read lower court opinions, but they do not necessarily do so in every case. Sometimes an appellate court can decide a legal question on the basis of the briefs alone. That is particularly so where the question at issue is whether to exercise a discretionary power of review, i.e., whether to review the merits of a lower court decision. In such instances, the nature of the issue may matter more than does the legal validity of the lower court decision. And the nature of the issue alone may lead the court to decide not to hear the case....

> For another thing, the opinion-reading requirement would impose a serious burden upon judges of state appellate courts, particularly those with discretionary review powers. Those courts have heavy workloads, which would be significantly increased if their judges had to read through lower court opinions or briefs in every instance.

*Baldwin*, 541 U.S. at 31–32. The Supreme Court therefore held that a claim is not "fairly presented" to a court for exhaustion purposes "if that court must read beyond a petition or a brief (or a similar document)." *Id*. at 32.

As noted, petitioner did not expressly ask the Louisiana Supreme Court to review the

8

substance of his claim that he was denied appellate review based on the denial of his trial transcript.  Therefore, it appears this claim is unexhausted.

It is also clear that a petitioner may avoid dismissal of a "mixed" petition by "amending or resubmitting the *habeas* petition to present only exhausted claims to the district court." *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *see also Neslo v. Cain*, 156 F.3d 182 (5th Cir. 1998) ("Prisoners who submit mixed petitions are entitled to resubmit a petition with only exhausted claims or to exhaust the remainder of their claims.").  Accordingly, it is recommended that petitioner's request to withdraw his denial of right to appellate review claim be GRANTED.

However, in the event that the United States District Judge finds that petitioner's right to appellate review claim is exhausted and therefore need not be withdrawn, the claim has no merit for the reasons set forth herein.

## II.    *Standards of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.[22] Subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure

---

[22] The AEDPA went into effect on April 24, 1996 and applies to *habeas* petitions filed after that date. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir.1998) (*citing Lindh v. Murphy*, 521 U.S. 320 (1997)); *see also, United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir.1992)(Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law).

questions of law, and mixed questions of both.  The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

A state court's determination of factual issues is presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

A state court's determination of questions of law and mixed questions of law and fact is given deference under 28 U.S.C. § 2254(d)(1), unless the decision "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States, or... involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  The "contrary to" and "unreasonable application" clauses have distinct meaning:

> A decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court

> has on a set of materially indistinguishable facts." Under § 2254(d)(1)'s "unreasonable application" language, a writ may issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001) *(quoting Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)) (citations omitted). However, " '[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.' " *Price v. Vincent*, 538 U.S. 634, 641 (2003) (*quoting Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. at 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002), *cert. denied, sub nom, Neal v. Epps*, 537 U.S. 1104 (2003).

The burden is on the petitioner to show that the state court applied the precedent to the facts of the case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24–25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir.2006). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 2014 WL 1612424, at

11

*4 (U.S. Apr. 24, 2014) (*quoting Harrington v. Richter*, 562 U.S. --, 131 S.Ct. 770, 786–787, 178 L.Ed.2d 624 (2011).

### III.    *Petitioner's Claims*

### 1.    Denial of right to appellate review due to failure to provide transcripts

Brujic claims that he was denied his right to appellate review in violation of his Sixth and Fourteenth amendment rights because he was not provided with a copy of the trial transcript.  Petitioner argues that the trial court improperly denied his requests for copies of his trial transcript filed pursuant to Louisiana Revised Statute 44:1 *et seq.*

The record shows that on March 31, 2010, Brujic filed a "Motion for production of trial transcripts pursuant to R.S. 44:1 *et seq.*"  The trial court denied this motion, citing as reason that the "case is still on appeal."[23]  On September 28, 2010, petitioner filed a "Request to custodian of records for cost of obtaining public records under La. R.S. 44:1 *et seq.*"  The trial court denied this request after holding a contradictory hearing on October 12, 2010.[24]  On collateral review, the state district court denied this ground for relief, finding that petitioner did receive the transcript which was required for appellate review and that the claim did not fall under one of the grounds cited in Louisiana Code of Criminal Procedure article 930.3.  The Louisiana First Circuit denied relief without stated reasons.

---

[23] State Rec., Vol. 4 of 5, Order signed 4/6/10.

[24] State Rec., Vol. 4 of 5, Minute Entry, 10/12/10.  A copy of the transcript of this hearing is not included in the state court record.

To the extent petitioner argues that the trial court erred in denying his request for free transcripts under Louisiana law, that claim fails.  The state court's interpretation and application of its own laws is a matter of state concern only.  "[I]t is not the province of a federal *habeas* court to reexamine state-court determination on state-law questions. In conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *see also Treesh v. Bagley*, 2007 WL 1039081, at *17 (N.D. Ohio Mar.31, 2007) (relying on *Estelle* for its finding that, to the extent that the petitioner was claiming an error of state law relative to the denial of his request for a record of grand jury proceedings, the court could not rule on the matter).  The misapplication of state law is not cognizable in a federal *habeas* proceeding unless a petitioner can prove that the error deprived him of a fair trial or proceeding.  *Mattheson v. King*, 751 F.2d 1432, 1445 (5th Cir.1985).  Only when the ruling is arbitrary and capricious does the misapplication of state law violate due process. *Id.* (*citing Richmond v. Lewis*, 506 U.S. 40, 50, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992)).

Brujic has no absolute right to a free copy of a trial transcript.  *See Bennett v. United States*, 437 F.2d 1210, 1211 (5th Cir.1971). Under Louisiana law, indigent inmates are entitled to copies of certain documents as of right, *State ex rel. Simmons v. State*, 93–0175 (La. 12/16/94), 647 So.2d 1094, but as to all other documents, including trial transcripts, an indigent inmate must show particularized need.  *Bernard v. Criminal District Court*, 94-2247 (La. 4/28/95), 653 So.2d 1174.  The trial court denied petitioner's request after a full

13

evidentiary hearing on the matter.  He has not shown that the trial court abused its discretion. While he claims he needed the records in order to pursue his state post-conviction remedies, this is not true.  Petitioner could have asserted his legal arguments without the transcripts, and petitioner's post-conviction pleadings reflect that he was fully aware of this.

Nor has Brujic shown that he was denied a constitutional right to appellate review.  The Due Process and Equal Protection Clauses of the Fourteenth Amendment require states to provide indigent inmates transcripts when such transcripts are essential to achieving adequate appellate review. *Griffin v. Illinois*, 351 U.S. 12, 18–19, 76 S.Ct. 585, 100 L.Ed. 891 (1956).  No constitutional denial results, however, when a transcript has been made available to petitioner's counsel on appeal.  *See, e.g., Anderson v. Tomasic*, 930 F.2d 32 (10th Cir.1991) (unpublished); *Gay v. Watkins*, 579 F.Supp. 1019, 1021 (E.D.Pa.1984).  In this case, petitioner's appellate counsel had access to the trial transcript. Therefore, Brujic's rights to due process and equal protection were not violated simply because he was not personally provided a copy of the transcript for purposes of direct appeal.  *Smith v. Beto*, 472 F.2d 164, 165 (5th Cir.1973); *see also Johnson v. Brewer*, Civ. Action No. 13-39, 2013 WL 5729604, at *5 (S.D. Miss. Oct. 22, 2013); *Rosado v. Unger*, Civ. Action No. 11-3747, 2012 WL 5871607, at *10 (S.D.N.Y. May 4, 2012) (finding that petitioner was not denied his constitutional right to appellate review when court denied petitioner's request for an additional free copy of trial transcript, which he sought in order to file a *pro se* supplemental brief, along with the appellate brief submitted on his behalf by appellate counsel.).

14

Petitioner has no absolute entitlement to a free copy of the transcript when seeking collateral review. *See United States v. Lewis*, 605 F.2d 379 (8th Cir.1979) (holding that prisoner does not have an absolute right to transcripts to collaterally attack his sentence); *see also Rodriguez v. Gonzalez*, 2009 WL 2914151, at * 1 (E.D.Cal. Sept.9, 2009) (stating that "there is no entitlement to a free copy of the transcript when seeking collateral review."). A post-appeal indigent defendant is not entitled to a free transcript if he had access to the record on direct appeal and fails to demonstrate that he requires the record to establish a non-frivolous post-conviction claim. *Smith v. Beto*, 472 F.2d at 165; *see also Yates v. Collins*, 988 F.2d 1210 (5th Cir.1993) (unpublished).

Brujic argues he was denied the transcripts even though he offered to pay for them. The record reflects that his second request to the trial court actually appears to be an inquiry as to the cost of the documents under the public records statute. It is unclear why he has been unable to obtain a copy of his transcripts if he was actually willing and able to pay the costs. Brujic also argues the trial court believed his attorney should have provided him a copy of his trial transcript, but his attorney has never done so. However, Brujic has submitted nothing to show he ever requested a copy from counsel and that counsel refused the request.

Regardless, Brujic has not shown that he was prejudiced by the absence of the transcript. Brujic asserted in his state district court application for post-conviction relief that he was unable to pursue claims of ineffective assistance of counsel at trial, ineffective assistance of counsel on appeal, prosecutor misconduct, *Batson* violation, insufficient evidence,

and *Brady* violation.  However, he made no attempt in his writ application to assert any legal basis or allegations of fact to support these claims.  Petitioner's assertion that the transcripts would reveal some error with regard to one or more of these issues is purely speculative.  He has not demonstrated how the lack of transcripts impeded his ability to assert his ineffective assistance claims or to raise any other colorable post-conviction claims.  For these reasons, Brujic is not entitled to *habeas* relief on this claim.

### 2.      Ineffective assistance of counsel

Brujic contends he received ineffective assistance of trial counsel based on counsel's failure to: (a) file a pretrial motion to suppress his statements; (b) investigate and prepare for trial; and (c) subpoena an alibi witness.[25]

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993);

---

[25] Petitioner raised these ineffective assistance claims on post-conviction review in all three state courts.  A review of the last reasoned decision by the state district court shows that the court applied *Strickland* and denied relief on the merits; however, the order misstates the ineffective assistance of counsel claims raised in petitioner's post-conviction application for relief.  In any event, the undersigned concludes that under either *de novo* review pursuant to *Strickland*, or deferential review under § 2254 (d), the claims do not merit relief.

*see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (*quoting Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* In making

17

a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific

18

legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, –––––, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 131 S.Ct. 770, 785–86 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Id.* at 788 (citations omitted; emphasis added).

### (a)    Failure to file a motion to suppress

The court notes at the outset that petitioner's ineffective assistance claims are premised

upon the admitted and troubling confusion on the part of defense counsel regarding his formal

appointment in this case.  Counsel initially proceeded under a mistaken belief that he was appointed to represent petitioner only in an unrelated burglary case, and maintained that he did not take any action on behalf of petitioner in the obstruction case during that time period. However, any confusion was clarified four months before trial at a hearing where the trial court reviewed the record in this case, and determined as a matter of fact, that counsel was the defendant's attorney of record for the obstruction charge, had properly been appointed consistent with the court's practice in cases involving conflict of counsel, and had, in fact, been receiving all notices in the obstruction case since 2005.[26] Defense counsel then filed a motion to quash the bill of information, which was denied on November 6, 2008.  He sought supervisory writs from the denial of the motion, and filed a motion to stay proceedings in the trial court, pending a ruling by the court of appeal.  The trial court denied the motion to stay on the morning of trial.  During the pendency of these proceedings, counsel admittedly chose not to file any pretrial motions (*i.e.*, discovery or suppression) that may have interrupted the running of the limitations period.[27]

Petitioner first claims counsel was ineffective in failing to file a motion to suppress the statements he made to detectives.  However,  counsel cannot have been ineffective for failing

---

[26] State Rec., Vol. 1 of 5, Transcript of proceedings held July 10, 2008, p. 4; *see also State v. Brujic*, 2009-0719, 2009 WL 3452893, at *2 (La. App. 1st Cir. 10/23/09) (rejecting claim that defendant's constitutional right to counsel was violated by failure to appoint counsel until July 10, 2008).

[27] State Rec., Vol. 1 of 5, Transcript of trial (Vol. I - 11/17/08), pp. 1-2.

to file a non-meritorious motion.  *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir.2002) *citing Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990) ("This Court has made clear that counsel is not required to make futile motions or objections."); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994).  In this case, petitioner cannot show that a motion to suppress the statements likely would have succeeded.

A suspect may waive his *Miranda* rights after receiving the required warnings "provided the waiver is made voluntarily, knowingly, and intelligently."  *Miranda*, 384 U.S. 436, 444 (1966); *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (stating that for a waiver of *Miranda* rights to be valid, it must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.").  A coerced-confession claim requires that the court look to the "totality of the circumstances" in determining whether the individual was unduly influenced and whether the confession was voluntary. *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987); *Gachot v. Stalder*, 298 F.3d 414, 418 (5th Cir.2002) (voluntariness of a suspect's confession is determined based on a "totality of the circumstances" approach).  Under this approach, the court considers the suspect's age, experience, education, background, intelligence, and whether the suspect has the capacity to understand the warnings given to him, the nature of his rights, and the consequences of waiver. *Id.* at 418–19.  A statement is involuntary if there existed official, coercive conduct that

made it unlikely the statement was a product of the individual's free choice. *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir.1992).

The State introduced six recorded statements at trial that were given by petitioner to detectives between December 2002 and October 2003.[28]  Initially, in his first few statements, petitioner denied any physical contact with Robinson on the day of the murder.  By the time he gave his May 28, 2003, statement, Brujic had invoked his right to have an attorney present.[29]  In his statement of May 28, 2003, Brujic implicates another individual with helping Robinson flee from the victim's house.  In his statement of September 26, 2003, he maintained that Robinson fled on foot from the scene of the crime and showed up at Sarah Faison's house where petitioner was staying.  Ultimately, in his final statement of October 1, 2003, he admits contact with Robinson on the day of the murder, and that he aided Robinson in leaving the scene of the crime and disposing of evidence.

Detective Ralph Sacks testified regarding each of these statements at trial.  Detective

---

[28] State Rec., Vol. 2-3 of 5, Trial Transcript (Vol. II - 11/18/08).  These statements were given on December 17 and 18, 2002, January 13, 2003, May 28, 2003, September 26, 2003, and October 1, 2003.

[29] Detective Sacks testified that petitioner invoked his right to an attorney during an April 17, 2003 interview.  The interview ceased at that point and the next interview was scheduled through his attorney, Ernie Bauer, for May 28, 2003.  State Rec., Vol. 3 of 5, Trial Transcript (Vol. II - 11/18/08), pp. 51.  Petitioner clearly had an attorney present during questioning on May 28, 2003 (*Id.*, p. 59), and there is no indication or argument otherwise suggesting that his attorney was not present for all subsequent interviews.

Sacks testified that prior to each statement, petitioner executed a waiver of his *Miranda* rights. He explained in detail the procedure they followed on each occasion in executing the waiver form and questioning petitioner.[30]   Detective Sacks testified that before each statement petitioner was advised of his rights, appeared to fully understand those rights, agreed to waive those rights, and that no coercion or threats were made to induce his statement.

Given the uncontroverted testimony by Detective Sacks as to the executed waivers, no basis existed for challenging the petitioner's valid *Miranda* waivers.  The record conclusively shows that petitioner knowingly and voluntarily waived his right to remain silent.  The *Miranda* warnings were read to petitioner *verbatim* by detectives, and petitioner signed the form acknowledging that he had been given and understood his rights.  Petitioner's actions reflect that he fully understood these rights because he ultimately invoked that right to an attorney during one of the police interviews.  Once he invoked his right to an attorney, the interview ceased.[31]  His inculpatory statements were made during subsequent consensual interviews, which were scheduled through his appointed attorney.

Nonetheless, petitioner argues his statements were involuntary based on his alleged cognitive and mental deficiencies, and the existence of an alleged inducement or promise.  Both arguments fail.   While petitioner asserts that his mental deficiencies and subnormal

---

[30] State Rec., Vol. 3 of 5, Trial Transcript (Vol. II - 11/18/08), pp. 39-41

[31] State Rec., Vol. 3 of 5, Trial Transcript (Vol. II - 11/18/08), p. 51.

intelligence rendered his statements involuntary,[32] petitioner has never provided any medical records or other evidence (*i.e.*, psychiatric evaluations, reports, test results, etc.), to show that he actually suffers from mental or intellectual deficiencies or the extent to which those deficiencies impaired his cognitive or mental capacity.  Thus, his purely speculative and conclusory argument that these alleged deficiencies precluded him from giving a voluntary statement must be rejected.  Furthermore, his inculpatory statements were made *after* he invoked his right to an attorney, and had the ability to consult with his attorney and have that attorney's assistance for the subsequent interviews.

No evidence exists to support petitioner's assertions that "after repeated and prolonged interrogations, detectives were able to overborne [his] will and coerce him by way of threats, promises and inducements to make several involuntary statements."[33]  Detective Sacks testified that they did not use threats or other coercive techniques to extract petitioner's statement. On both direct and cross-examination, Detective Sacks made it clear that petitioner voluntarily submitted to the interviews and chose to fully cooperate with detectives.[34]  And notably, petitioner does not point to anything the police said or did to *physically* coerce or otherwise force him to give inculpatory statements.  His assertion that he was threatened or

---

[32] Rec. Doc. No. 3, Petition, p. 22.

[33] Rec. Doc. No. 3, p. 18.

[34] State Rec., Vol. 3 of 5, Trial Transcript (Vol. II - 11/18/08), pp. 40-41, 88-89.

coerced is entirely self-serving and conclusory.

Petitioner's sole argument is that his statements were involuntary because of promises or inducements made in connection with an unrelated criminal case. Petitioner claims that when Detective Sacks and his assistant were investigating the Jaumet murder, they questioned petitioner regarding his knowledge of the victim and alleged perpetrator, Robinson, and "petitioner was made plea deals in exchange for a concurrent sentence."[35] According to petitioner:

> Although the homicide took place in 2001, the state did not bring Mr. Robinson to trial until 2008. The State, years earlier, conducted discussions with Petitioner's counsel in an unrelated matter in Jefferson Parish, whereby Petitioner would supply statements and participate as a witness for the state in exchange for promises of [sic] plea agreement on unrelated charges and promises of concurrent time, with a sentence he was currently serving, with Attorney Martin E. Regan being present at the plea agreement. The State retracted any such promises and Petitioner was not called as a witness in the State's case against Dominic Robinson.[36]

He attaches a copy of the 2004 plea agreement as an exhibit to his federal petition.[37] Discussions held with petitioner's attorney present on his behalf do not suggest coercion. Petitioner certainly has not established coercion based merely on his belief that any cooperation with Detective Sacks and his partner during an interview about the Jaumet case

---

[35] *Id.* at p. 19.

[36] Rec. Doc. No. 3, Petition, p. 2.

[37] Rec. Doc. No. 3, Petition, Exhibit 1.

may ultimately benefit him with regard to pending unrelated contraband charges. Nor would such a belief or statements regarding his cooperation, even if it occurred in the context of his obstruction charge, rise to the level of coercion.  "An interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect." *See United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1980) (*citing United States v. Brandon*, 633 F.2d 773, 777 (9th Cir.1980).

In this case, there simply was no basis upon which to move to suppress or exclude the statements; therefore, it is not reasonable to conclude that the statements would have been excluded even if counsel had sought to suppress them.  Because a motion to suppress his inculpatory statements would not have succeeded, counsel did not provide ineffective assistance by failing to pursue a futile motion; counsel has no duty to assert a legally baseless claim.  *See Clark*, 19 F.3d at 966.  Brujic has not carried his burden of showing that there is a reasonable probability, as defined in *Strickland*, that but for his counsel's alleged deficiency the result of the proceeding would have been different. Accordingly, petitioner is not entitled to *habeas* relief on this claim.

### (b)    Failure to prepare for trial

Brujic next argues counsel failed to conduct reasonable pretrial investigation and discovery.  "'A defendant who alleges a failure to investigate on the part of his counsel must

26

allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir.1998) (emphasis added, citation omitted); *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir.2011). Here, Brujic claims that further investigation could have revealed evidence of his subnormal intellect and mental health problems. However, as previously addressed, petitioner has produced no evidence whatsoever to support his allegations that he suffered from these conditions, and certainly nothing at a level that would prove his inability to waive his *Miranda* rights or render his inculpatory statements involuntary. Therefore, counsel was not deficient in failing to investigate these issues.

Brujic also contends that counsel failed to engage in any discovery. While the record shows that counsel did not file any discovery motions, this did not prevent him from "engaging in discovery," and otherwise adequately preparing for trial. As noted by the State, the record reflects that the State provided open file discovery early in the case, which included 7900 pages of original discovery, as well as supplemental discovery and physical evidence.[38] Although the record reflects that defense counsel chose not to file discovery motions pending his motion to quash the indictment, there is no evidence that filing discovery motions would have changed the outcome at trial. Petitioner has failed to specify what additional discovery would have revealed or how it would have affected the outcome in this case. Thus, even if

---

[38] State Rec., Vol. 1 of 5, State's Answer to Motions for Discovery.

counsel was deficient in his discovery preparation, petitioner suffered no prejudice as a result.

### (c)      Failure to subpoena alibi witness

Finally, Brujic argues that counsel was deficient in failing to present the testimony of an alibi witness at trial.[39] He claims this alibi witness would have testified that Brujic was with her on the day of the murder, thus undermining the reliability of his own inculpatory statements and proving they were involuntary and coerced.  Petitioner has not shown that counsel's performance was deficient in this regard.  He has not identified the witness and produced an affidavit setting forth her testimony as required to establish his claim.  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").  Nor has he established how an alibi witness would be useful or beneficial to his defense.  Petitioner had already admitted to detectives that he helped Robinson escape the scene of the crime, hide from police, and dispose of incriminating evidence.  An alibi witness would not have refuted petitioner's own confession regarding his involvement or undermined the voluntariness or reliability of that confession.  Thus, he has failed to establish there is a reasonable probability that, but for counsel's failure to call this witness, the outcome would have been different.  The state courts properly rejected this ineffective assistance claim.

---

[39] Although petitioner fails to identify this witness in his federal *habeas* petition, he identified the witness in his state district court post-conviction application as a girlfriend.

In sum, petitioner has not demonstrated that the state courts' decision rejecting his claim of ineffective assistance of counsel was contrary to, or involved an unreasonable application of, *Strickland*.  He is not entitled to *habeas* relief on this claim.

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's request to withdraw his unexhausted denial of right to appellate review claim be **GRANTED**.

**IT IS FURTHER RECOMMENDED** petitioner's federal *habeas corpus* application asserting only his ineffective assistance of counsel claim be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[40]

New Orleans, Louisiana, this 6th  day of _____ May _____, 2014.

_____

 **MICHAEL B. NORTH**
 **UNITED STATES MAGISTRATE JUDGE**

---

[40]   *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.